**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES SIMON, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>      v.<br><br>SEAWORLD PARKS & ENTERTAINMENT, INC., a Delaware Corporation,<br><br>          Defendant. | Case No. 3:21-cv-01488-DMS-MSB<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>(1) **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750,** *et seq.***;**<br>(2) **FALSE ADVERTISING, BUS. & PROF. CODE §§ 17500,** *et seq.***;**<br>(3) **UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***;**<br>(4) **BREACH OF CONTRACT;**<br>(5) **NEGLIGENT MISREPRESENTATION;**<br>(6) **INTENTIONAL MISREPRESENTATION AND FRAUD; AND,**<br>(7) **UNJUST ENRICHMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    Plaintiff Charles Simon ("Mr. Simon" or "Plaintiff") individually and on behalf of all other persons similarly situated, by his undersigned attorneys, files this Class Action Complaint against SeaWorld Parks & Entertainment, Inc. ("SeaWorld" or "Defendant") to, without limitation, stop Defendant's wrongful retention of consumers' funds and to obtain damages and restitution as well as a declaration that Defendant's actions were unlawful as further set forth below.

2.    Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and on information and belief as to all other matters, including, and based upon, *inter alia*, the investigation conducted by and through his attorneys which includes, without limitation, a review of Defendant's website, public documents, and information readily obtainable on the internet.

3.    At all times relevant herein, Defendant has operated, and continues to operate, a theme park known as SeaWorld San Diego.

4.    Defendant also operates 12 parks within the United States, including (but not limited to) SeaWorld Orlando and SeaWorld San Antonio.[1] SeaWorld San Diego is an animal theme park, oceanarium, outside aquarium and marine mammal park located at 500 Sea World Drive, San Diego, California 92109.

5.    Defendant is a self-proclaimed "leading theme park and entertainment company[,] one of the world's foremost zoological organizations[,] and a global leader in animal husbandry, behavior management, veterinary care and animal welfare."[2] Defendant also owns or licenses a portfolio of recognized brands including SeaWorld®, Busch Gardens® and Sea Rescue®.

6.    Defendant's website gives consumers various choices when it comes to purchasing tickets to SeaWorld San Diego. Consumers have the option to purchase

---

[1] https://seaworldentertainment.com/buy-tickets/ (last visited Aug. 13, 2021).
[2] https://seaworldentertainment.com/about-us/ (last visited Aug. 13, 2021).

Date-Specific tickets, Two Day Tickets, Two Park Tickets (for SeaWorld and Aquatica San Diego), San Diego 3-for-1 Tickets (for admission to SeaWorld San Diego, San Diego Zoo, and San Diego Zoo Safari Park), Go San Diego® - 3-Day Passes, Fun Cards (for Unlimited visits in a year), and various 12 month Annual Passes.

7.      Once a consumer selects a ticket online, they are presented with an option to upgrade their ticket by adding an "All-Day Dining Deal," costing up to an additional $44.99 per person.

8.      On its website, Defendant advertises the "All-Day Dining Deal" as allowing consumers who purchase the deal to "[e]at and drink all day as often as once every hour at SeaWorld San Diego …"[3]

9.      The "All-Day Dining Deal" particularly allows purchasing adults (Ages 10+) to: (a) visit a participating restaurant once every hour; (b) receive an entrée, plus a side order or desert; and (c) receive a soft drink or iced tea.  It also allows children (Ages 3-9) to redeem a kids meal once per hour until participating restaurant(s)' closing time.[4]

10.     As of at least August 11, 2021, Defendant's website lists various restaurants participating in the "All-Day Dining Deal," including Explorer's Café, Shipwreck Reef Café®, Calypso Bay Smokehouse, and Mama Stella's® Pizza Kitchen at SeaWorld San Diego.

11.     Once a consumer has purchased their ticket to SeaWorld San Diego on Defendant's website, they receive a printable/digital ticket, which includes: (a) a description of the ticket with the day of admittance, (b) a scannable barcode, (c) directions on how to redeem the ticket, and (d) legal terms pertaining to the ticket's use and applicability.

---

[3] https://seaworld.com/san-diego/upgrades/enhance-your-day/ (last visited Aug. 13, 2021).

[4] *Id*.

12.     In addition to the restaurants listed on Defendant's website participating in the "All-Day Dining Deal," the legal terms on the tickets also list Big Bird's Bistro, Coral Market, Shark Market, and Orca West Market & Pretzel Shop as additional restaurants participating in the "All-Day Dining Deal."

13.     Plaintiff and other similarly situated individuals purchased their tickets relying on Defendant's representation that consumers who purchased their ticket with the "All-Day Dining Deal" would receive a meal (including a side/dessert and drink) from an advertised participating restaurant for each hour they were at the SeaWorld San Diego Park at no additional charge.

14.     However, the tickets purchased by Plaintiff and other similarly situated individuals were rejected at many of the participated restaurants either listed on their tickets or on Defendant's website, despite Plaintiff and other similarly situated individuals having purchased their tickets with the additional cost of the "All-Day Dining Deal."

## I.   JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because: (a) the amount in controversy exceeds $5,000,000,[5] exclusive of interest and costs; (b) the proposed Class consists of more than 100 Class Members; (c) Defendant is a citizen of a state different from that of the Plaintiff; and (d) none of the exceptions under the subsection apply to this action.

16.     This Court has supplemental jurisdiction over the violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*.,

---

[5]     According to the website located at https://growjo.com/company/SeaWorld_San_Diego#:~:text=Estimated%20Revenue%20%26%20Financials,currently%20%24103.7M%20per%20year (last accessed August 13, 2021), the estimated annual revenue for SeaWorld San Diego is $103.7 million per year.

Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.* and claims for breach of contract, fraud, conversion, and unjust enrichment as well as any other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

17. This Court has both general and specific personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct substantial business in the State of California and within the County of San Diego.

18. SeaWorld Parks & Entertainment, Inc., is registered with the California Secretary of State to do business, and in fact does business in California under entity number C0168406.

19. Defendant has sufficient minimum contacts in and with the County of San Diego, California, and has intentionally availed itself of the markets within California through the sale and provision of its goods and services to render the exercise of jurisdiction by this Court reasonable.

20. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district and Defendants conduct substantial business within this judicial district.

## II.  PARTIES

21. Upon information and belief, SeaWorld Parks & Entertainment, Inc. is a Delaware Corporation with its principal place of business in Orlando, Florida.

22. Upon information and belief, Defendant has, at all relevant times, engaged in trade or commerce in California by advertising and offering goods, services, merchandise, and vacation packages and accommodations to consumers within California and throughout the country.

23. At all relevant times, Plaintiff Charles Simon has been and is a citizen of the State of Nevada, and resides in Las Vegas, Nevada.

### III. PLAINTIFF'S EXPERIENCE

24.     On or about July 10, 2021, using his smartphone while physically present in San Diego, California, Mr. Simon purchased tickets for himself and three of his family members to visit SeaWorld San Diego on July 11, 2021.

25.     After choosing the date on which he wanted to visit SeaWorld San Diego with his family, Mr. Simon was presented with the option of including the "All-Day Dining Deal" with each ticket he was about to purchase.

26.     Instead of selling the "All-Day Dining Deal" for an additional cost of $44.99 to the ticket price, Defendant sold the "All-Day Dining Deal" as a bundle with each ticket for a combined cost of $99.99.

27.     In effect, Plaintiff spent approximately $40.00 more per ticket purchased after bundling the "All-Day Dining Deal" with each of the tickets. As such, Plaintiff spent an additional approximately $160.00 to obtain the benefits of the advertised "All-Day Dining Deal."

28.     On or about July 10, 2021, Mr. Simon received an email from Defendant confirming his purchase. This email contained a section titled, "Your Purchase Summary," which outlined certain details about Mr. Simon's ticket purchase, such as the order number, order date, last four digits of the credit card used to purchase the tickets, the cost of each ticket, the total cost of all four tickets, and the taxes paid on those tickets. This summary also identified Mr. Simon's Las Vegas, Nevada, address as the billing and shipping address for the ticket purchase.

29.     The same email contained a section titled "E-Ticket & Reservation Details," which outlined the type of tickets purchased (i.e., "Ticket & Reservation + All-Day Dining – SeaWorld San Diego"), the date on which the ticket was valid (i.e., "7/11/2021"), and the names of Mr. Simon and his family members.

30.     Upon reviewing information on Defendant's website about the "All-Day Dining Deal," Plaintiff was led to believe that he, and each of the family members for

whom he would purchase a ticket with the "All-Day Dining Deal," would receive one meal per hour at the theme park at no additional charge at any of Defendant's advertised participating restaurants.

31.     Relying on the representations that Defendant made on its website about the "All-Day Dining Deal" as described above, Plaintiff purchased four Date-Specific Tickets with All-Day Dining to visit SeaWorld San Diego on July 11, 2021.

32.     In further reliance on Defendant's representations concerning All-Day Dining and the advertised participating restaurants listed on the electronically provided tickets, on July 11, 2021, Mr. Simon and three of his family members arrived at SeaWorld San Diego and began to explore its various attractions, services and amenities.

33.     After spending a few hours at the park, Mr. Simon and his family became hungry and desired to utilize the "All-Day Dining Deal" included with each of their tickets, and visited the Calypso Bay Smokehouse to obtain food and refreshments.

34.     After standing in line at the smokehouse for approximately 45 minutes, Plaintiff and his family were denied their free meals even though they had not previously used their All-Day Dining tickets within the same hour.

35.     After again waiting in line, Plaintiff underwent a similar experience when he and his family presented their tickets at another participating restaurant, the Orca West Market & Pretzel Shop, where restaurant employees refused to honor the "All-Day Dining Deal".

36.     In fact, one of the employees at the Orca West Market & Pretzel Shop told to Plaintiff and his family that the restaurant did not participate in the "All-Day Dining Deal" program.

37.     An employee further informed Plaintiff that Defendant had been previously told that the particular restaurant did not participate in the "All-Day Dining Deal" program.  Thus, Defendant knowingly misrepresented to Plaintiff and

others similarly situated that various restaurants participated in the "All-Day Dining Deal" program when that was not true.

38.    Plaintiff also learned while in the theme park that the Big Bird's Bistro restaurant was closed that day.[6]

39.    At this point in time, Plaintiff grew increasingly frustrated that both Plaintiff and his family were unable to redeem the benefits of the "All-Day Dining Deal" at, at least, two of the restaurants that Defendant previously had represented were participating restaurants, and the fact the Big, Bird's Bistro restaurant was closed. Thus, Plaintiff contacted Defendant's Guest Relations department in writing, online the same day (i.e., July 11, 2021), expressing his negative experience with the "All-Day Dining Deal" program not being offered as represented because only some of the purportedly participating restaurants would honor the program.

40.    The Guest Relations department did not contact Plaintiff until July 20, 2021—over one week after he had contacted them about his complaint.

41.    In response to Plaintiff's complaint, the Guest Relations representative requested that Plaintiff email a clear photograph or screenshot of his tickets.

42.    That same day, Plaintiff emailed both a PDF and screenshot of his ticket to Defendant's Guest Relations representative.

43.    To date, Defendant's Guest Correspondence Team has not responded to Plaintiff's last email.

44.    Plaintiff would like to visit SeaWorld San Diego again the future and participate in the All-Day Dining deal with his family members, including with his two young children, but cannot be certain that he will not be misled again concerning the All-Day Dining deal until and unless Defendant makes appropriate corrections

---

[6] As of approximately May 31, 2021, Defendant's website did not list Big Bird's Bistro restaurant as being closed, but did list the Fusion Smoothies & Wraps and the Seaside Coffee and Bakery restaurants as "temporarily closed".

to its advertising of the All-Day Dining deal, such as correctly identifying which restaurants are participating restaurants.

45.     Plaintiff and his family visited SeaWorld San Diego approximately five years prior to the most recent visit in July of 2021.

## IV.  CLASS ACTION ALLEGATIONS

46.     Plaintiff bring this action on behalf of himself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and 23(c)(4).

47.     **The Nationwide Class is defined as follows:**

All persons within the United States who paid monies during the period of four years prior to the filing of the Complaint through the date of trial, for the "All-Day Dining Deal" program at SeaWorld San Diego, where one or more of the allegedly participating restaurant(s) were either not participating in, or not honoring, the "All-Day Dining Deal" program on the date of visit.

Such persons are referred to herein individually as a "Nationwide Class Member" and collectively as the "Nationwide Class".

48.     **The California Class is defined as follows:**

All persons who while physically present in California paid monies during the period of four years prior to the filing of the Complaint through the date of trial, for the "All-Day Dining Deal" program at SeaWorld San Diego, where one or more of the allegedly participating restaurant(s) were either not participating in, or not honoring, the "All-Day Dining Deal" program on the date of visit.

Such persons are referred to herein individually as a "California Class Member," and collectively as the "California Class".

49.     The Classes described in this Complaint may be collectively or individually referred to as the "Class" or "Classes" and proposed members of the classes may be individually and collectively referred to herein as "Class Members."

50.     The following people are excluded from the Class: (a) any judge or magistrate presiding over this action and members of their families; (b) Defendant,

Defendant's subsidiaries, parents, successors, predecessors, affiliates, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's counsel and Defendant's counsel; and (f) the legal representatives, successors, and assigns of any such excluded persons.

51.    Plaintiff satisfies the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as a representative party pursuant to Rule 23 of the Federal Rules of Civil Procedure.

52.    **Numerosity**: The exact size of each of the Classes is unknown and not available to Plaintiff at this time, but is believed to consist of at least 100,000[7] customers, making individual joinder in this case impracticable.

53.    Class Members can be easily identified through Defendant's records and/or objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other consumer fraud, unlawful trade practices, and class action controversies.

54.    **Typicality**: Plaintiff's claims are typical of the claims of other Class Members in that Plaintiff and the Class Members sustained actual damages that all arise out of Defendant's contracts, agreements, wrongful conduct and misrepresentations, false advertising, and unlawful practices, and Plaintiff and the Class Members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

55.    **Adequate Representation**: Plaintiff will fairly and adequately

---

[7]    According to the website located at https://www.sandiegouniontribune.com/business/tourism/story/2020-07-16/seaworld-san-diego-only-major-theme-park-to-see-attendance-decline-in-2019 (last accessed on August 13, 2021), in "2019, 3,485,000 people visited SeaWorld San Diego …"

1   represent and protect the interests of the Class and has retained counsel competent
2   and experienced in complex Classes actions to vigorously prosecute this action on
3   behalf of the Classes.  Plaintiff has no interests that conflict with or are antagonistic
4   to those of the Classes, and Defendant has no defenses unique to Plaintiff.

5       56.    In addition to satisfying the prerequisites of Rule 23(a), Plaintiff
6   satisfies the requirements for maintaining a class action under Rule 23(b)(2), (b)(3),
7   and (c)(4).

8       57.    During the proposed Class Period, as set forth above, Defendant
9   represented on their attraction webpages and tickets in standardized uniform
10  language that purchasers of the "All-Day Dining Deal" could redeem one meal per
11  hour at any of its participating restaurants at no additional charge. However, "All-
12  Day Dining Deal" purchasers were denied access to meals at no additional charge
13  when they sought to redeeming their free meal(s) at advertised participating
14  restaurants, including but not limited to Calypso Bay Smokehouse and Orca West
15  Market & Pretzel Shop.

16      58.    Class Members purchased "All-Day Dining Deal" upgrades that were
17  falsely or misleadingly advertised in writing by defendant as being redeemable at
18  any of the several participating restaurants.

19      59.    Plaintiff and the Class Members all purchased "All-Day Dining Deal"
20  upgrades with the promise that they would be able to receive meal(s) at no additional
21  cost from any participating restaurant for every hour they were at SeaWorld San
22  Diego, but they were deceived by Defendant's false or misleading representations
23  and advertising, subjected to unfair business practices, and lost money as a result of
24  such practices, misconduct, and breaches of their agreements with Defendant.

25      60.    Because Defendant's misrepresentations were made during and in
26  connection with the ticket purchasing process, all Class Members including Plaintiff,
27  were exposed to and continue to be exposed to Defendant's misrepresentations and
28  subjected to Defendant's misconduct.  If this action is not brought as a class action,

Defendant can continue to deceive and defraud consumers, breach their contracts, and violate the law with impunity.

61.  **Commonality and Predominance**: There are numerous questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not necessarily limited to the following:

a.  Whether Defendant charges a premium for the right of consumers to participate in the "All-Day Dining Deal" program;

b.  Whether Defendant represented to Plaintiff and the Classes that various restaurants (including but not limited to Calypso Bay Smokehouse and Orca West Market & Pretzel Shop) were part of the participating restaurants in the "All-Day Dining Deal" program;

c.  Whether Defendant knowingly represented to Plaintiff and the Classes that various restaurants (including but not limited to Calypso Bay Smokehouse and Orca West Market & Pretzel Shop) were part of the participating restaurants in the "All-Day Dining Deal" program when those restaurants did not participate in, or honor, that program;

d.  Whether at least one of the restaurants that allegedly participated in the "All-Day Dining Deal" program declined to provide Plaintiff and the Classes with at least one meal while Plaintiff and the Class on their date of visiting;

e.  Whether the Big, Bird's Bistro was closed on the date of visit by Plaintiff or the Class Members;

f.  Whether Defendant's advertising omissions and misrepresentations constituted false advertising under California law;

g.  Whether Defendant's misrepresentations and omissions about Plaintiff's and the Class's right to meals was likely to deceive, confuse, or create a misunderstanding;

h. Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

i. Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

j. Whether Defendant misrepresented its products and services to include characteristics, uses, or benefits which they do not have;

k. Whether the value of purchases for the "All-Day Dining Deal" program is diminished by less restaurants participating in the program that was advertised;

l. Whether Defendant advertised its products and services with intent not to sell them as advertised;

m. Whether Defendant misrepresented that its products and services were the subject of a transaction which had been supplied in accordance with previous representations when they had not;

n. Whether Defendant breached its contracts or agreements with Plaintiffs and the Class;

o. Whether Plaintiff and the Class were damaged as a proximate cause or result of Defendant's breaches;

p. Whether Defendant's conduct, practices, and misrepresentations related to the marketing, advertising, and sales of tickets and/or ticket upgrades for its goods and services, were unfair, deceptive, confusing, misleading, and/or unlawful in any respect, thereby violating the FAL, UCL, and other applicable state laws;

q. Whether Defendant collected, took, or received monies in Defendant's possession and belonging to Plaintiff and the Class and wrongfully retained such monies to its own use and benefit;

r. Whether Plaintiff and the Class are entitled to rescission, restitution, injunctive, declaratory, or other relief; and

s.  Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

62.  **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. A class action is superior to individual litigation because: (a) the amount of damages available to individual plaintiffs are insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedure; (b) individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and (c) the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63.  In addition, class certification is appropriate under Rule 23(b)(1) or (b)(2) because:  (a) the prosecution of separate actions by the individual Members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant; (b) the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Classes as a whole.

64.  The damages suffered by the individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from

Defendant's misconduct.

65.     Even if Class Members could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

66.     Defendant has acted on grounds applicable to the Classes, making final injunctive relief or declaratory relief appropriate for the Classes as a whole. In addition, Class damages will be adduced and proven at trial through expert testimony and other competent evidence, including evidence exclusively in Defendant's possession.

67.     California law holds that the amounts paid by consumers for falsely advertised services and goods is a proper measure of class damages and class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

68.     On information and belief, based on publicly available information, Plaintiff alleges that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated revenues for sales for each of the Nationwide Class and California Class during the proposed Class Period, each exceeds $5 million.

## V.  <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

#### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT

#### CAL. CIV. CODE §§ 1750, *ET SEQ.*

#### [CALIFORNIA CLASS ONLY]

69.     Plaintiff realleges and incorporates the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

70.     Plaintiff bring this claim individually and on behalf of members of the

proposed California Class.

71.     The CLRA prohibits unfair or deceptive practices in connection with the sale of goods or services to a consumer.

72.     Moreover, the CLRA is meant to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.

73.     The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).  Access to one meal per hour at no additional cost is being furnished as a service for other than a commercial or business purpose to consumers.

74.     Plaintiff and Class Members purchased "Services" from Defendant as defined by the CLRA.  Cal. Civ. Code § 1761(b).

75.     Plaintiff and Class Members are "consumers" who paid fees for access to Defendant's services for personal, family or household purposes as defined by the CLRA.  Cal. Civ. Code § 1761(d).

76.     Each of the purchases made by Plaintiff and the Class Members from the Defendant were "Transactions" as defined by the CLRA.   Cal. Civ. Code § 1761(e).

77.     Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

78.     Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of services to consumers.

79.     Defendant's advertising that each consumer who paid for an "All-Day Dining Deal" upgrade program would receive one meal per hour from a participating restaurant at no additional cost is false and misleading to a reasonable consumer, including Plaintiff, because Defendant and its participating restaurants in fact

refused to honor their promise and instead charged full price for such meals.

80.     Defendant, acting with knowledge, intentionally, and unlawfully brought harm upon Plaintiff and the Classes by knowingly and/or purposefully failing to properly disclose that many of its participating restaurants were either no longer participating in the "All-Day Dining Deal" program or refusing to fulfill their obligations under this program even though they were still participating in it.

81.     Defendant, acting with knowledge, intentionally, and unlawfully brought harm upon Plaintiff and the Classes by knowingly and/or purposefully failing to ensure that the restaurants it listed on both its website and its tickets were actually participating in the "All-Day Dining Deal" program.

82.     The monetary value of the purchase(s) for the "All-Day Dining Deal" program by Plaintiff the member of the Classes was at least substantially diminished by less restaurants participating in the program than was represented by SeaWorld San Diego.

83.     Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant misrepresented the particular characteristics, benefits, and quantities of the services.

84.     Cal. Civ. Code § 1770(a)(7) also prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(7) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant misrepresented the particular standard,

quality or grade of the services.

85.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant advertises services with the intent not to sell the services as advertised.

86.    Cal. Civ. Code § 1770(a)(14) further prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(14), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant is representing that the ticket, membership, and vacation package purchase transactions confers or involves rights, remedies, or obligations that they do not have which was intended to result in the sale of services.

87.    Plaintiff and the Class acted reasonably when they purchased Defendant's "All-Day Dining Deal" upgrade on the belief that Defendant's misrepresentations were true and lawful.

88.    Plaintiff and the Class suffered tangible, concrete, injuries in fact caused by Defendant because: (a) they would not have purchased or paid for Defendant's "All-Day Dining Deal" upgrade absent Defendant's misrepresentations and omissions of a warning that they would not in fact receive the meals promised by Defendant at all locations represented by Defendant in the terms of the "All-Day Dining Deal"; (b) they would not have purchased or paid for Defendant's "All-Day Dining Deal" upgrade on the same terms absent Defendant's misrepresentations and omissions; (c) they paid a price premium to add the "All-Day Dining Deal" upgrade to Defendant's tickets based on Defendant's misrepresentations and omissions;

(d) Defendant's "All-Day Dining Deal" upgrade did not have the characteristics, benefits, or quantities as promised; and (e) Defendant never intended to refund monies paid for their "All-Day Dining Deal" upgrades.

89.     Defendant misrepresented the nature of Plaintiff's and the Class Members' purchases when it falsely stated that the "All-Day Dining Deal" upgrade would give them access to one meal from a participating restaurant at no additional cost. These misrepresentations would and in fact did deceive Plaintiff, Class Members, and other reasonable consumers.

90.     On information and belief, Defendant's violations of the CLRA discussed above were done with the actual knowledge, intent, and awareness that the conduct alleged was wrongful.

91.     On information and belief, Defendant committed these acts knowing they would harm Plaintiff and Class Members.

92.      Plaintiff and Class Members were harmed as a direct and proximate result of Defendant's violations of the CLRA and are thus entitled to a declaration that Defendant violated the CLRA.

93.     Under California Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendant's violations of the CLRA.

94.     On August 20, 2021, Plaintiff, through his attorneys, placed in the mail (certified mail return receipt requested) a demand for corrective action pursuant to Cal. Civ. Code § 1782 addressed to Defendant and Defendant's agent for service of process.

95.     If Defendant fails to respond to Plaintiff's letter, fails to agree to rectify the problems associated with the actions detailed above, or fails to give notice to all affected consumers within 30 days of the date of written notice, Plaintiff reserves the right to amend the Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief under the CLRA.

96.    Attached hereto as **Exhibit A** is a sworn declaration from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE FALSE ADVERTISING LAW

### CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*

### [CALIFORNIA CLASS ONLY]

97.    Plaintiff realleges and incorporates the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

98.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

99.    Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

100.    Defendant engaged in a scheme of selling customers "All-Day Dining Deal" upgrades even though Plaintiff, Class Members, and other consumers were either unable or not allowed to redeem the benefits of that program at many of Defendant's participating restaurants. Defendant's advertising and marketing of their "All-Day Dining Deal" upgrade misrepresented and/or omitted the true content and nature of Defendant's services.  Defendant knew that these statements were unauthorized, inaccurate, and misleading.

101.    Defendant's advertising that their "All-Day Dining Deal" upgrade would allow purchasers of that upgrade to redeem one meal per hour at any of its participating restaurants is false and misleading to a reasonable consumer, including Plaintiff, because Defendant and its participating restaurants in fact barred "All-Day

Dining Deal" upgrade purchasers from redeeming their meals while the purchasers were at SeaWorld San Diego.

102.  Defendant violated § 17500, *et seq.* by misleading Plaintiff and the Class to believe that they would have access to one meal per hour from a participating restaurant at SeaWorld San Diego when they paid an additional fee to upgrade their tickets.

103.  Defendant knew, or should have known through the exercise of reasonable care, that its advertising of the "All-Day Dining Deal" upgrade is false and misleading because not all of the restaurants that Defendant represented were participating in the "All-Day Dining Deal" were in fact participating in that program at SeaWorld San Diego.

104.  Further, Defendant knew or should have known that it was defrauding and/or breaking its promises to customers when both it was aware that several allegedly participating restaurants refused or were refusing to provide "All-Day Dining Deal" upgrade purchasers for reasons other than an attempt to use the program more than once per hour at SeaWorld San Diego.

105.  Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased or paid for Defendant's "All-Day Dining Deal" upgrade absent Defendant's misrepresentations and omissions of a warning that they would not in fact receive the meals promised by Defendant through the terms of the "All-Day Dining Deal"; (b) they would not have purchased or paid for Defendant's "All-Day Dining Deal" upgrade on the same terms absent Defendant's misrepresentations and omissions; (c) they paid a price premium for Defendant's "All-Day Dining Deal" upgrade based on Defendant's misrepresentations and omissions; (d) Defendant's "All-Day Dining Deal" upgrade did not have the characteristics, benefits, or quantities as promised; and (e) Defendant never intended to refund monies paid for their "All-Day Dining Deal" upgrades.

106.   Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

107.   Plaintiff and the Class suffered tangible, concrete injuries in fact as a result of Defendant's actions as set forth herein because they purchased "All-Day Dining Deal" upgrades in reliance on Defendant's false and misleading marketing claims that they would receive one meal per hour from any participating restaurant at SeaWorld San Diego.

108.   Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant advertised its "All-Day Dining Deal" upgrade in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

109.   Defendant profited from the sales of the falsely and deceptively advertised "All-Day Dining Deal" upgrades to unwary and believing consumers.

110.   As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and Class Members are entitled to injunctive and equitable relief and restitution. Plaintiff and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members compensatory and punitive damages.

111.   Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.

112.   Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any

common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

### [CALIFORNIA CLASS ONLY]

113.   Plaintiff realleges and incorporate the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

114.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants.

115.   Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

116.   Defendant's advertising that customers would receive one meal per hour from a participating restaurant at SeaWorld San Diego upon buying an "All-Day Dining Deal" upgrade, is false and misleading to a reasonable consumer, including Plaintiff, because many of the allegedly participating restaurants were actually not participating in the "All-Day Dining Deal" program, yet Defendant has not refunded customers the monies they paid or any portion of the monies paid for that program.

117.   Upon information and belief, Defendant continues to charge their customers extra for the "All-Day Dining Deal" upgrade, while deceiving consumer about the true nature of that program.

118.   **Unlawful:**  The acts alleged herein are "unlawful" under the UCL in that they violate as described herein at least the following laws: (1) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (2) the Consumers

Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.

119.   **Fraudulent:**  A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

120.   As set forth herein, Defendant's claims relating to the online marking of its "All-Day Dining Deal" upgrade are likely to deceive reasonable consumers and the public.  Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that they would receive one meal per hour at any participating restaurant while they were visiting SeaWorld San Diego.

121.   **Unfair:**  Defendant's conduct with respect to the advertising and sale of the "All-Day Dining Deal" upgrade is unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

122.   Defendant's business practices, described herein, violate the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's advertising and promise to provide one meal per hour at participating restaurants to purchasers of the "All-Day Dining Deal" upgrade, while denying purchasers of that upgrade their right to redeem their meals, is of no benefit to consumers.

123.   Defendant's conduct with respect to the advertising and sale of the "All-Day Dining Deal" upgrade was also unfair because it violated California public policy as declared by specific statutory or regulatory provisions, including but not limited to the FAL and CLRA.

124.   Defendant's conduct with respect to the advertising and sale of the "All-Day Dining Deal" upgrade is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

125.   Plaintiff and the members of the Classes acted reasonably when they

purchased "All-Day Dining Deal" upgrades based on the belief that they would be able redeem their meals at any of Defendant's participating restaurants at SeaWorld San Diego.

126. Defendant profited from the sale of its falsely, deceptively, and unlawfully advertised "All-Day Dining Deal" upgrade to unwary consumers.

127. Plaintiff, like other consumers, should not have to pay an additional $30-$50 per ticket/person for the "All-Day Dining Deal" upgrade when several purportedly participating restaurants were not actually participating in the "All-Day Dining Deal" program at the time of the visit by Plaintiff and visits by members of the Classes.

128. Plaintiff and the Class lost money or property as a result of Defendant's UCL violations because:  (a) they would not have purchased or paid for Defendant's "All-Day Dining Deal" upgrade absent Defendant's misrepresentations and omissions of a warning that they would not in fact receive the meals promised by Defendant through the terms of the "All-Day Dining Deal" at all locations; (b) they would not have purchased or paid for  Defendant's "All-Day Dining Deal" upgrade on the same terms absent Defendant's misrepresentations and omissions; (c) they paid a price premium for Defendant's "All-Day Dining Deal" upgrade based on Defendant's misrepresentations and omissions; (d) Defendant's "All-Day Dining Deal" upgrade did not have the characteristics, benefits, or quantities as promised; and (e) Defendant never intended to refund monies paid for their "All-Day Dining Deal" upgrades.

129. Plaintiff and Class Members are likely to be damaged by Defendant's deceptive trade practices, as Defendant continues to disseminate, and is otherwise free to continue to disseminate, misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

130. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members who have suffered concrete tangible injury

in fact as a result of Defendant's fraudulent, unlawful, and unfair conduct.

131.   In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of themselves, Class Members, and the general public, seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

132.   Plaintiff, on behalf of themselves and Class Members, also seeks an order for the restitution of all monies from the sale of the falsely advertised "All-Day Dining Deal" upgrades that Defendant unjustly acquired through acts of unlawful competition.

133.   Plaintiff and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiff and the Class Members request the Court enter an order awarding them compensatory and punitive damages.

134.   Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.

135.   Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

### [NATIONWIDE CLASS AND CALIFORNIA CLASS]

136.   Plaintiff realleges and incorporate the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

137.   Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Class against Defendant.

138.   Plaintiff and each Class Member entered into a written, uniform, standardized agreement and contract with Defendant for one meal per hour at any of Defendant's participating restaurants while visiting SeaWorld San Diego.

139.   Plaintiff and each Class Member performed their obligations under the contract by paying an additional fee ranging from approximately $30 to $50 for the "All-Day Dining Deal" upgrade.  Pursuant to the terms of the agreement, Defendant agreed that Plaintiff and Class Members would be given one meal per hour at any listed participating restaurant in SeaWorld San Diego.

140.   Performance was possible, but Defendant failed to perform its obligation under the contract because several of the purportedly participating restaurants refused to provide the meals that purchasers of the "All-Day Dining Deal" upgrade because they were in fact not participating in the "All-Day Dining Deal" program at the time.

141.   Attached hereto as **Exhibit B** is a true and correct, partially redacted, copy of Plaintiff's ticket. The terms of the Parties' contract are set forth under the tickets' "Legal Terms," which note, for instances, that "participating All-Day Dining restaurants" included "Shipwreck Reef Café, Mama, Stella's Pizza Kitchen, Calypso Bay Smokehouse, Big, Bird's Bistro, Coral Market, Shark Market, Orca Wes, Market & Pretzel Shop".

142.   The tickets for Plaintiff's family members have the same terms.

143.   Defendant breached its agreement with Plaintiff and the members of the Classes because Defendant and its purportedly participating restaurants failed or refused to allow Plaintiff and the Class to redeem one or more meals at no additional costs, despite Plaintiff and the members of the Classes having paid monies for that contractual right, where refusal to provide the food and/or drink was not due to an attempt to redeem food or drink more than once per hour.

144.   Plaintiff and Class Members have suffered injury and damages from Defendant's breach by, without limitation, not receiving the benefit of their bargain.

145. In every contract or agreement there is an implied promise of good faith and fair dealing which means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Defendant violated the duty to act fairly and in good faith. Plaintiff and the Class entered into contracts with the Defendant.

146. Plaintiff and the Class did all, or substantially all, of the significant things that the contract required them to do. All conditions required for Defendant's performance had occurred. Defendant did not honor Plaintiff's and the Class Members' right to receive the benefits of the contract. Plaintiff and the Class Members were harmed and damaged by Defendant's conduct.

147. Plaintiff and the Class have been damaged as a direct and proximate result of Defendant's bad faith and Defendant's breach of the agreement as alleged herein. Plaintiff and the Class are entitled to actual damages in an amount to be determined in this proceeding. Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members compensatory damages.

148. Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.

149. Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

//
//
//
//

## FIFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### [NATIONWIDE CLASS AND CALIFORNIA CLASS]

150.   Plaintiff realleges and incorporates the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

151.   Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Class against Defendant.

152.   As set forth herein, Defendant misrepresented that purchasers of the "All-Day Dining Deal" upgrade would be eligible to receive a meal from any participating restaurant each hour they were at SeaWorld San Diego without additional cost. However, many of the allegedly participating restaurants did not actually participate in the "All-Day Dining Deal" program. As such, Defendant misrepresented the nature of Plaintiff's and the Class Members' purchases.

153.   At the time Defendant made these misrepresentations, Defendant knew or should have known that these misrepresentations were false. Defendant at least negligently misrepresented and or negligently omitted material facts about the purchase of the "All-Day Dining Deal" upgrade.

154.   In providing its services to Plaintiff and the Class Members, Defendant owed a duty to exercise reasonable care to make full, fair, and adequate disclosure in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of the "All-Day Dining Deal." This duty included, among other things, taking reasonable measures to protect the rights of Class Members in compliance with applicable law, including, but not limited to, procedures and policies to supervise, restrict, limit, and determine the accuracy and truthfulness of their representations, materials, and advertising in connection with their services.

155.   In providing the "All-Day Dining Deal" to Plaintiff and the Class Members, Defendant owed a duty to exercise reasonable care regarding and when making their representations in connection with the characteristics, uses, benefits,

standards, quality, attributes, and nature of their services. It was foreseeable that if Defendant did not take reasonable measures to ascertain and ensure the accuracy and truthfulness of their representations, Plaintiff and the Class Members would rely on its representations and purchase "All-Day Dining Deal" upgrades they thought would be redeemable at the restaurants that Defendant represented in writing were participating restaurants.  Defendant should have known to take precautions to ensure its advertising, materials, and representations were accurate.

156.   The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class Members reasonably, justifiably, and detrimentally relied, were intended to induce and influence, and actually induced and influenced, Plaintiff and Class Members to purchase Defendant's "All-Day Dining Deal" upgrade.  Plaintiff and Class Members would not have purchased the "All-Day Dining Deal" upgrade, or would not have purchased the upgrade on the same terms, if the true facts had been known. The negligent actions and misrepresentations of Defendant caused actual and tangible concrete injury and harm to Plaintiff and Class Members who are entitled to damages and other legal and equitable relief as a result.

157.   Defendant's negligence was a substantial factor in causing harm to Plaintiff and Class Members. As a direct and proximate cause and result of Defendant's failure to exercise reasonable care and use reasonable measures to ensure the accuracy of its representations and advertising, Plaintiff and Class Members have suffered actual injury-in-fact and economic damages, including incurring "All-Day Dining Deal" upgrade related costs that they would not have otherwise incurred and paid.

158.   Neither Plaintiff nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to Defendant's making of its misrepresentation, nor to the insufficient policies, procedures, and measures which were omitted and led to the failure to ensure the accuracy and truthfulness of Defendant's claims in connection with the nature of their services.

159.   Plaintiff and the Class Members request the Court enter an order

awarding Plaintiff and the Class Members mandatory restitution, rescission, and/or damages, and that they are entitled to recover their reasonable attorneys' fees. Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION AND FRAUD

### [NATIONWIDE CLASS AND CALIFORNIA CLASS]

160. Plaintiff realleges and incorporates the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

161. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Class against Defendant.

162. As set forth herein, Defendant misrepresented that purchasers of the "All-Day Dining Deal" upgrade would receive a meal from any participating restaurant each hour they were at SeaWorld San Diego. However, Defendant knew that several allegedly participating restaurants were not actually participating in the "All-Day Dining Deal" or were refusing to honor proper requests to redeem food or drink under that program at no additional cost to the consumer. As such, Defendant misrepresented the nature of Plaintiff's and the Class Members' purchases.

163. These misrepresentations were made with knowledge of their falsehood with the intent that the general public, including Plaintiff and the Class Members, would rely upon them, or in reckless disregard of the truth thereof. Defendant knew, or should have known, that Plaintiff, Class Members, and consumers would rely on the terms of the "All-Day Dining Deal" and expect to be entitled to one meal per hour at any participating restaurant at SeaWorld San Diego.

164.    Defendant knowingly failed to provide purchasers of the "All-Day Dining Deal" upgrade with their promised meals at one or more restaurants.

165.    Plaintiff and the Class Members were harmed because Defendant made a false promise to them.  Defendant did not intend to perform its promises under the terms of the "All-Day Dining Deal."

166.    Defendant was aware that Plaintiff and Class Members rely on its promises relating to the "All-Day Dining Deal" program.

167.    Plaintiff and the Class Members reasonably relied on the terms of the "All-Day Dining Deal" when they made their purchases, and as such, reasonably relied on the promises made therein.  Defendant did not perform its obligations under the terms of the "All-Day Dining Deal," namely provide purchasers with one meal per hour from any of its participating restaurants.

168.    Plaintiff and the Class Members were harmed.  Plaintiff's and the Class Members' reliance on Defendant's terms was a substantial factor in causing them harm.

169.    The misrepresentations made by Defendant upon which Plaintiff and Class Members reasonably and justifiably relied were widely disseminated, were an integral part of the contract, and were intended to induce and actually induced Plaintiff and Class Members to purchase Defendant's "All-Day Dining Deal" upgrades.  Plaintiff and Class Members would not have purchased Defendant's "All-Day Dining Deal" upgrades on the same terms, if the true facts had been known. The fraudulent actions of Defendant caused damage to Plaintiff and the Class Members, who are entitled to damages and other legal and equitable relief as a result.

170.    Plaintiff and Class Members request the Court enter an order awarding Plaintiff and the Class Members mandatory restitution, rescission, and/or actual damages, punitive and exemplary damages, and that they are entitled to recover their reasonable attorneys' fees.

171.    Plaintiff and the Class Members therefore also seek pre-and-post-

judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

### UNJUST ENRICHMENT IN THE ALTERNATIVE TO BREACH OF CONTRACT

### [NATIONWIDE CLASS AND CALIFORNIA CLASS]

172.   Plaintiff realleges and incorporates the allegations elsewhere in the First Amended Complaint as if set forth in full herein.

173.   Plaintiff brings this claim, in the alternative to the breach of contract claim, individually and on behalf of the members of the Nationwide Class and California Class against Defendant.

174.   "Under California law, the elements of unjust enrichment are: (a) receipt of a benefit; and (b) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.")

175.   "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to her or her former position by return of the thing or its equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

176.   Plaintiff and Class Members conferred non-gratuitous benefits upon Defendant by "All-Day Dining Deal" upgrades, thereby significantly and materially increasing Defendant's revenues, profit margins, and profits, and unjustly enriching Defendant at the expense of and to the detriment of Plaintiff and the Class Members.

177.   Plaintiff and the Class allege that Defendant owes money to them for the unlawful or deceptive conduct described herein. Plaintiff and the Class Members paid for "All-Day Dining Deal" giving them access to one meal per hour.  Defendant, by charging consumers for access to one meal per hour, received money from Plaintiff and the Class.

178.   The money was paid by mistake, where an undue advantage was taken from the Plaintiff's and the Class's lack of knowledge of the deception, whereby money was exacted to which the Defendant had no legal right.  Defendant is therefore indebted to Plaintiff and the Class in a sum certain, specifically the fees actually paid by purchasers of the "All-Day Dining Deal" upgrade for one meal per hour at any participating restaurant in SeaWorld San Diego.

179.   Defendant is therefore indebted to Plaintiff and the Class in a sum certain for the additional money had and received by the Defendant, which the Defendant in equity and good conscious should not retain.

180.   Defendant is therefore liable to Plaintiff and the Class in the amount of unjust enrichment or money had and received to be determined at trial.

181.   Defendant's retention of any benefit collected directly and indirectly from Plaintiff's and Class Members' payments to Defendant violates principles of justice, equity, and good conscience. As a result, Defendant has been unjustly enriched.

182.   Plaintiff and Class Members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiff and Class Members the benefits it has unjustly obtained.

183.   Defendant accepted or retained such benefits for a year or more with knowledge that Plaintiff's and Class Members' rights were being violated for financial gain.  Defendant has been unjustly enriched in retaining the revenues and profits from Plaintiff and Class Members' payments, which retention under these circumstances is unjust and inequitable.

184.   As a direct and proximate result of Defendant's unlawful practices and the retention of Plaintiff's and the Class Members' payments, Plaintiff and Class Members have suffered concrete harm and injury, including, but not limited to, monetary loss in connection with their payments made to Defendant and purchases of their services as alleged herein.

185.   Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members would be unjust and inequitable.

186.   Plaintiff and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

187.   Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members restitution, rescission, and/or damages, and that they are entitled to recover their reasonable attorneys' fees.

188.   Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## VI.   <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff, on behalf of himself, all others Class Members similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, and the following remedies:

(a)     An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing Plaintiff's attorneys as interim class counsel as class counsel;

(b)     An Order requiring Defendant to bear the cost of class notice(s);

(c)     An Order awarding declaratory and other equitable relief, including rescission, as necessary to protect the interests of Plaintiff and the Class Members;

(d)     An Order declaring Defendant's conduct unlawful;

(e)     An Order enjoining Defendant from engaging in the unfair, unlawful, and deceptive business practices and false advertising complained of herein, including through public injunctive relief;

(f)     An Order compelling Defendant to conduct a corrective advertising campaign, including through public injunctive relief;

(g)     An Order compelling Defendant to recall and destroy all misleading and deceptive advertising materials, including through public injunctive relief;

(h)     An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

(i)     An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition, plus pre-and post-judgment interest thereon;

(j)     An Order requiring Defendant to pay all actual and statutory damages permitted under the causes of action alleged herein;

(k)     An Order requiring Defendant to pay punitive and exemplary damages permitted under the causes of action alleged herein;

(l)     An award of pre-and-post-judgment interest;

(m)    An award of attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs; and

(n)    Any other and further relief, including rescission, that Court deems necessary, just, or proper.

### TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Date: September 14, 2021                    **KAZEROUNI LAW GROUP, APC**

By: _/s Abbas Kazerounian____
    ak@kazlg.com
    Abbas Kazerounian
    *Attorneys for Plaintiff*

**Additional Counsel for Plaintiff**
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523